FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 03, 2023

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER R.,[1] | No. 2:20-cv-00403-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | **ECF Nos. 15, 16** |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 15, and grants Defendant's motion, ECF No. 16.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

1

**JURISDICTION**

2      The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

3 1383(c)(3).

4

**STANDARD OF REVIEW**

5      A district court's review of a final decision of the Commissioner of Social

6 Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

7 limited; the Commissioner's decision will be disturbed "only if it is not supported

8 by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

9 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

10 reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

11 (quotation and citation omitted).  Stated differently, substantial evidence equates to

12 "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

13 citation omitted).  In determining whether the standard has been satisfied, a

14 reviewing court must consider the entire record as a whole rather than searching

15 for supporting evidence in isolation.  *Id.*

16      In reviewing a denial of benefits, a district court may not substitute its

17 judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

18 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

19 rational interpretation, [the court] must uphold the ALJ's findings if they are

20 supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

ORDER - 2

F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

ORDER - 4

1    If the severity of the claimant's impairment does not meet or exceed the

2    severity of the enumerated impairments, the Commissioner must pause to assess

3    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

4    defined generally as the claimant's ability to perform physical and mental work

5    activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

6    404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the

7    analysis.

8    At step four, the Commissioner considers whether, in view of the claimant's

9    RFC, the claimant is capable of performing work that he or she has performed in

10    the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

11    If the claimant is capable of performing past relevant work, the Commissioner

12    must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

13    If the claimant is incapable of performing such work, the analysis proceeds to step

14    five.

15    At step five, the Commissioner considers whether, in view of the claimant's

16    RFC, the claimant is capable of performing other work in the national economy.

17    20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

18    the Commissioner must also consider vocational factors such as the claimant's age,

19    education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

20    416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

ORDER - 5

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On December 11, 2017, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging an amended disability onset date of December 11, 2017. Tr. 15, 63-64, 217-29. The applications were denied initially and on reconsideration. Tr. 140-43, 150-63. Plaintiff appeared before an administrative law judge (ALJ) on January 9, 2020. Tr. 31-62. On January 24, 2020, the ALJ denied Plaintiff's claim. Tr. 12-30.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2022, has not engaged in substantial gainful activity since December 11, 2017. Tr. 17. At step

ORDER - 6

two, the ALJ found that Plaintiff has the following severe impairments: lumbar

degenerative disc disease, asymmetric polyneuropathy, and anxiety.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 18.  The ALJ then concluded that Plaintiff has the RFC to perform

sedentary work with the following limitations:

> [Plaintiff] can never climb ladders, ropes, or scaffolds, and can only
> occasionally perform all postural activities; he cannot use foot
> controls with the right lower extremity; he cannot have concentrated
> exposure to vibration or extreme cold; he can have no exposure to
> hazards such as unprotected heights and moving mechanical parts;
> and he needs a routine, predictable work environment with no more
> than occasional changes.

Tr. 19.

At step four, the ALJ found Plaintiff is unable to perform any of his past

relevant work.  Tr. 23.  At step five, the ALJ found that, considering Plaintiff's

age, education, work experience, RFC, and testimony from the vocational expert,

there were jobs that existed in significant numbers in the national economy that

Plaintiff could perform, such as final assembler; bonder, semi-conductor; and

bench hand.  Tr. 24.  Therefore, the ALJ concluded Plaintiff was not under a

disability, as defined in the Social Security Act, from the amended alleged onset

date of December 11, 2017, through the date of the decision.  *Id.*

ORDER - 7

On September 15, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2. Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 15 at 13.

## DISCUSSION

**A. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 15 at 13-14. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

ORDER - 8

1    "The claimant is not required to show that [the claimant's] impairment could

2    reasonably be expected to cause the severity of the symptom [the claimant] has

3    alleged; [the claimant] need only show that it could reasonably have caused some

4    degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

5        Second, "[i]f the claimant meets the first test and there is no evidence of

6    malingering, the ALJ can only reject the claimant's testimony about the severity of

7    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

8    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

9    omitted). General findings are insufficient; rather, the ALJ must identify what

10   symptom claims are being discounted and what evidence undermines these claims.

11   *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

12   *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

13   explain why it discounted claimant's symptom claims)). "The clear and

14   convincing [evidence] standard is the most demanding required in Social Security

15   cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

16   *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

17       Factors to be considered in evaluating the intensity, persistence, and limiting

18   effects of a claimant's symptoms include: 1) daily activities; 2) the location,

19   duration, frequency, and intensity of pain or other symptoms; 3) factors that

20   precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

an individual's record," to "determine how symptoms limit ability to perform

work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the evidence.  Tr. 20.

### 1.  Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the

objective medical evidence.  Tr. 20-21.  An ALJ may not discredit a claimant's

symptom testimony and deny benefits solely because the degree of the symptoms

alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400

F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a

relevant factor, along with the medical source's information about the claimant's

pain or other symptoms, in determining the severity of a claimant's symptoms and

their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2),

416.929(c)(2).

First, the ALJ found the objective evidence was inconsistent with Plaintiff's

complaints of disabling physical limitations.  Tr. 20.  While Plaintiff alleges

significant impairment due to his back, imaging showed only mild to moderate

degeneration.  *Id.* (citing Tr. 428, 577, 728, 820).  Nerve conduction and

electromyography testing showed only mild polyneuropathy.  Tr. 20 (citing Tr.

731, 757-58).  Physical examinations have often been normal, with normal

strength, reflexes, straight leg raise testing, range of motion, and gait.  Tr. 20

(citing, e.g., Tr. 462, 464-65, 467-71, 588, 593, 599, 753, 776).  The ALJ noted

some abnormalities, including impaired gait at times, which he accommodated for

in the RFC.  Tr. 20 (citing Tr. 731, 772, 819).  Plaintiff often reported extreme

pain, but he was observed as being in no acute distress.  Tr. 21 (citing, e.g., Tr.

358-60, 462,464-65, 466-68).  Multiple providers noted that Plaintiff's conditions

were not severe enough to justify the level of narcotics he was taking.  Tr. 588-59,

597, 731.

1    While Plaintiff alleges he uses a cane all the time, there is only a single

2  documentation of the use of a cane in his records.  Tr. 21 (citing Tr. 792).  An ALJ

3  may discount a claimant's subjective complaints based on the unprescribed use of

4  an assistive device, such as a cane.  *See Chaudhry v. Astrue*, 688 F.3d 661, 671

5  (9th Cir. 2012); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir.

6  2008).  Plaintiff reported using a walker, Tr. 350, but there is no documented use

7  of a walker.  Plaintiff also alleges he has frequent long-lasting migraines, but the

8  ALJ noted there is no documentation of reported migraines nor treatment for

9  migraines in the record.  Tr. 21.  While there is documentation of migraines before

10  the alleged onset date, Tr. 460, 639, there is no documentation of Plaintiff

11  reporting migraines during the relevant period.  A medication is listed in his

12  medication list as being "as needed for migraine," in 2017 and 2019 but there is no

13  evidence Plaintiff was having ongoing migraine symptoms nor that he was taking

14  the medication.  Tr. 755, 838.

15    Second, the ALJ found the objective evidence was inconsistent with

16  Plaintiff's complaints of disabling mental health limitations.  Tr. 20.  Plaintiff has

17  had limited treatment for his anxiety, and though he has presented with an anxious

18  affect at some appointments, he has had a normal mental status examination at

19  many appointments.  *Id.* (citing Tr. 518, 528, 819).  Treatment records have

20  documented normal orientation, memory, language, knowledge, concentration,

1   cooperation, and cognitive abilities.  Tr. 18 (citing, e.g., Tr. 462, 464-65, 467-69,

2   471).

3          Plaintiff contends the objective evidence supports his claims.  ECF No. 15 at

4   16-17.  However, Plaintiff cites to testing that documented only mild findings and

5   "early" chronic denervation/reinnervation.  *Id.* (citing Tr. 583-84, 757-58).  Several

6   of the records cited by the ALJ predate the alleged onset date, however many of

7   the records document Plaintiff's functioning during the relevant period and

8   demonstrate inconsistencies between Plaintiff's claims and the objective record.

9   *See* Tr. 20-21.  On this record, the ALJ reasonably found the objective evidence is

10  inconsistent with Plaintiff's claims.  This was a clear and convincing reason, along

11  with the other reasons offered, to reject Plaintiff's symptom claims.

12      *2.  Improvement with Treatment*

13         The ALJ found Plaintiff's impairments, when treated, were not as severe as

14  Plaintiff alleged.  Tr. 20.  The effectiveness of treatment is a relevant factor in

15  determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3),

16  416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006

17  (9th Cir. 2006) (determining that conditions effectively controlled with medication

18  are not disabling for purposes of determining eligibility for benefits); *Tommasetti*,

19  533 F.3d at 1040 (recognizing that a favorable response to treatment can

20  undermine a claimant's complaints of debilitating pain or other severe limitations).

ORDER - 13

Although he has sought limited routine treatment for his anxiety, Plaintiff reported good control of his mood with medication.  Tr. 20.  Plaintiff was noted as having a stable and "pretty good" mood, and unchanged anxiety, at many appointments.  Tr. 616, 621, 625, 629, 814, 840.   Although he was anxious at some appointments, Plaintiff had normal mental status examinations at multiple appointments.  Tr. 21, 518, 528, 819.  Plaintiff has also reported that his pain medication allows him to maintain functioning and he has been noted as tolerating his pain medications, and stable on his current medications.  Tr. 23, 601, 614, 617, 621, 626, 648, 669.  The ALJ reasonably found Plaintiff's impairments, when treated, are not as severe as Plaintiff alleges.  This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 3.  Drug-Seeking/Exaggeration Behavior

The ALJ found Plaintiff engaged in drug-seeking and symptom exaggeration.  Tr. 21.  Drug seeking behavior can be a clear and convincing reason to discount a claimant's credibility.  *See Edlund*, 253 F.3d at 1157 (holding that evidence of drug seeking behavior undermines a claimant's credibility.  Additionally, the tendency to exaggerate provides a permissible reason for discounting Plaintiff's reported symptoms.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (The ALJ appropriately considered Plaintiff's tendency to exaggerate when assessing Plaintiff's credibility, which was shown in a doctor's

1    observation that Plaintiff was uncooperative during cognitive testing but was

2    "much better" when giving reasons for being unable to work.).  Moreover, in

3    evaluating symptom claims, the ALJ may utilize ordinary evidence-evaluation

4    techniques, such as considering prior inconsistent statements.  *Smolen v. Chater*,

5    80 F.3d 1273, 1284 (9th Cir. 1996).

6         The ALJ noted Plaintiff was on a high amount of pain medication compared

7    to the imaging.  Tr. 21.  Plaintiff's treating provider stated Plaintiff's reported pain

8    "is much more dependence and hyperesthesia syndrome."  *Id.* (citing Tr. 591, 787).

9    Dr. Lewis stated Plaintiff is likely dependent on medication and should be able to

10   manage on much less medication.  Tr. 21 (citing Tr. 603).  Another treating

11   provider also noted Plaintiff reported back pain while his imaging was "relatively

12   mild."  Tr. 21 (citing Tr. 731).  Plaintiff's provider has been attempting to taper

13   him off his narcotic regimen, and Plaintiff was resistant to the tapering.  Tr. 21

14   (citing Tr. 587, 643, 785, 791, 810, 821).  Plaintiff has not pursued other

15   recommended treatment for his reported pain, such as physical therapy,

16   acupuncture, chiropractic care, and injections, and did not timely seek pain

17   management consultations.  Tr. 21 (citing Tr. 646, 801-18).

18        The ALJ found Plaintiff's insistence on high doses of narcotics, when the

19   objective evidence does not document significant pathology, raises concerns about

20   overreporting of symptoms to obtain narcotics.  Tr. 21.  Additionally, the ALJ

ORDER - 15

1  found the records contain evidence of pain behavior, suggesting exaggeration. *Id.*

2  (citing Tr. 732). At an examination, Plaintiff reported his primary care physician

3  "is trying to manipulate his narcotic medications," he mentioned his application for

4  disability benefits, and he called after the examination and insisted the provider

5  document Plaintiff's report that he has severe right foot pain that developed over

6  several months that is severe enough that he cannot wear regular shoes and is only

7  wearing flip flops. Tr. 730-31. Plaintiff also reported numbness in his right hand,

8  but he had normal grip and extension. Tr. 731. Dr. Carlson stated Plaintiff had an

9  "inordinate amount of body pain which is clearly not neuropathic or related to this

10 pathology." *Id.* During a follow-up examination, movement of Plaintiff's ankle

11 caused "sudden pain," and while his ambulation initially had "only very subtle

12 antalgic features," it was "very antalgic" after the examination. Tr. 732. When he

13 left, his gait was normal. Tr. 733. The provider noted that Plaintiff reported

14 persistent swelling but that it had resolved on the day of the examination; the

15 provider noted "to this examiner no swelling is identified." Tr. 732. Despite his

16 reported significant impairment in his right foot, the provider observed that there is

17 no asymmetry in Plaintiff's worn shoes, and no evidence of scuffing. *Id.* The

18 provider labeled Plaintiff's actions "Pain behavior." *Id.* The ALJ also noted

19 Plaintiff's repeated mentions of his application for benefits raises a concern for a

20

ORDER - 16

fixation on secondary gain.  Tr. 21 (citing Tr. 587, 595, 730, 732, 791, 810, 840, 845).

Plaintiff contends there is no evidence of symptom exaggeration to obtain pain medication.  ECF No. 17 at 5-6.  However, there is evidence of Plaintiff's reported symptoms being inconsistent with the evidence, and evidence of an ongoing focus on narcotic medication and resistance to tapering the medication.  On this record, the ALJ reasonably found Plaintiff engaged in narcotic-seeking and symptom exaggeration.  This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

4. *Activities of Daily Living*

The ALJ found Plaintiff's symptom claims were inconsistent with his activities of daily living.  Tr. 21.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that

ORDER - 17

are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ability to care for others without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins,* 261 F.3d at 857. However, if the care activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

Plaintiff reported he is able to take his child to school and activities, prepare meals, handle laundry, dishes, and other housework, drive, go to the store, and manage finances. Tr. 21 (citing Tr. 344-51). Plaintiff no difficulties with memory, understanding, following instructions, nor getting along with others. Tr. 349. Plaintiff reported receiving some help from his daughter and a friend with household tasks. Tr. 346-47. Plaintiff was noted as being a student in 2017 and 2018. Tr. 752, 768. A medical record also states that he started working in July 2018. Tr. 626. The State agency adjudicator noted Plaintiff made inconsistent statements about his work history, ability to care for his daughter and household, and that any future appeals should be referred to the Cooperative Disability Investigations Unit for fraud investigation. Tr. 71, 76. Plaintiff also reported waking his daughter, making sure she gets ready for school/camp, spending time

ORDER - 18

with friends who visit and sometimes going on outings to church or other social

outings.  Tr. 310-12.  Records indicate Plaintiff reported being "very busy" taking

care of his daughter.  Tr. 625.  Plaintiff also described the waxing and waning of

his symptoms, and the assistance he receives from others in caring for his daughter

and home.  Tr. 310-19.  The ALJ's analysis of Plaintiff's care for his daughter does

not set forth an analysis of how his care, which is described largely as supervision

with assistance from others, is inconsistent with his allegations of disabling

physical limitations.  However, any error is harmless as the ALJ gave other

supported clear and convincing reasons discussed herein to reject Plaintiff's

symptom claims.  Plaintiff is not entitled to remand on these grounds.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinions of

Howard Platter, M.D.; Lewis Weaver, M.D.; and Jeremy Lewis, M.D.  ECF No. 15

at 17-19.  Plaintiff also contends the ALJ erred in failing to call Howard Shapiro,

M.D., a medical expert, to testify at the hearing.  *Id.*

As an initial matter, for claims filed on or after March 27, 2017, new

regulations apply that change the framework for how an ALJ must evaluate

medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of*

*Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no

ORDER - 19

longer "give any specific evidentiary weight . . . to any medical

opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at

5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must

consider and evaluate the persuasiveness of all medical opinions or prior

administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a)-

(b), 416.920c(a)-(b).  The factors for evaluating the persuasiveness of medical

opinions and prior administrative medical findings include supportability,

consistency, relationship with the claimant (including length of the treatment,

frequency of examinations, purpose of the treatment, extent of the treatment, and

the existence of an examination), specialization, and "other factors that tend to

support or contradict a medical opinion or prior administrative medical finding"

(including, but not limited to, "evidence showing a medical source has familiarity

with the other evidence in the claim or an understanding of our disability

program's policies and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-

(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in

the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence
>     and supporting explanations presented by a medical source are to

ORDER - 20

support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id*. The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still

consider the length and purpose of the treatment relationship, the frequency of

examinations, the kinds and extent of examinations that the medical source has

performed or ordered from specialists, and whether the medical source has

examined the claimant or merely reviewed the claimant's records.  *Id.* at 792.

However, the ALJ is not required to make specific findings regarding the

relationship factors.  *Id.*  Even under the new regulations, an ALJ must provide an

explanation supported by substantial evidence when rejecting an examining or

treating doctor's opinion as unsupported or inconsistent.  *Id.*

   *1. Dr. Platter and Dr. Weaver*

   On October 30, 2018, Dr. Platter opined Plaintiff can lift/carry 20 pounds

occasionally and 10 pounds frequently; stand/walk about six hours in an eight-hour

workday and sit about six hours in an eight-hour day; he can never climb

ladders/ropes/scaffolds, and can occasionally stoop, kneel, crouch, and crawl; and

he should avoid concentrated exposure to extreme cold, vibration, and hazards.  Tr.

77-79.  On March 1, 2019, Dr. Weaver opined Plaintiff had the same limitations

set forth by Dr. Platter.  Tr. 114-16.  The ALJ found Dr. Platter and Dr. Weaver's

opinions were largely persuasive.  Tr. 22.

   First, the ALJ found the opinions were supported by thorough summaries of

the evidence.  *Id.*  Supportability is one of the most important factors an ALJ must

consider when determining how persuasive a medical opinion is.  20 C.F.R. §§

ORDER - 22

404.1520c(b)(2), 416.920c(b)(2).  The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  Both opinions are accompanied by analyses of the medical evidence to support the opinions.  Tr. 72-74, 110-11.  Dr. Weaver also provided further explanation of his opinion.  Tr. 116-17.

Second, the ALJ found the opinions were consistent with the medical record as a whole.  Tr. 22.  Consistency is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The ALJ found the opinions were consistent with the medical records, including largely normal examinations, provider opinions that Plaintiff's pain is not well-supported by the objective evidence, and mild to moderate imaging findings.  Tr. 22.  Plaintiff contends the objective evidence is inconsistent with the State agency opinions, as the evidence, such as the January 2018 MRI, document more significant impairment than the RFC accounts for.  ECF No. 15 at 17.  While the MRI documented a disc extrusion that contacts the right S1 nerve root, the MRI otherwise documented mild to moderate findings.  Tr. 577.  Dr. Carlson stated the MRI findings were "relatively mild except for a[n]

ORDER - 23

asymmetric right lateral recess change [at] L5-S1." Tr. 731. The State agency

providers also rendered their opinions after the January 2018 MRI and thus

considered the MRI when forming their opinions.

The ALJ reasonably found the State agency opinions were supported and

consistent with the medical evidence. The ALJ did not err in his consideration of

Dr. Platter and Dr. Weaver's opinions.

### 2. Dr. Lewis

On July 17, 2019, Dr. Lewis, a treating doctor, rendered an opinion on

Plaintiff's functioning. Tr. 825-27. Dr. Lewis diagnosed Plaintiff with chronic

thoracic and lumbar pain, chronic right foot neuropathic pain, and arm paresthesia.

Tr. 825. Dr. Lewis opined Plaintiff is unable to be on his feet for periods greater

than 15 to 30 minutes, he cannot lift more than 25 pounds or repetitively lift, and

he requires frequent position changes. Tr. 825. He opined Plaintiff is unable to

participate in work activities, but also opined Plaintiff can engage in sedentary

work. Tr. 825-26. The ALJ found Dr. Lewis' opinion is not persuasive. Tr. 22.

First, the ALJ found the opinion is a checkbox form lacking explanation. *Id.*

The more relevant objective evidence and supporting explanations that support a

medical opinion, the more persuasive the medical opinion is. 20 C.F.R. §§

404.1520c(c)(1), 416.920c(c)(1). Dr. Lewis' opinion does not contain a supporting

ORDER - 24

explanation nor citation to records that support his opinion.  Tr. 825-27.  Dr.

Lewis' opinion is also not supported by his treatment records, as discussed *infra*.

Second, the ALJ found the opinion is internally inconsistent.  Tr. 22.  The

more relevant objective evidence and supporting explanations that support a

medical opinion, the more persuasive the medical opinion is.  20 C.F.R. §§

404.1520c(c)(1), 416.920c(c)(1).  Although Dr. Lewis opined Plaintiff cannot

engage in any work activities, he also opined Plaintiff can engage in sedentary

work.  Tr. 825-26.  Dr. Lewis did not provide an explanation for this inconsistency.

Third, the ALJ found the opinions is inconsistent with the objective medical

evidence and the other medical opinions.  Tr. 22-23.  The more consistent an

opinion is with the evidence from other sources, the more persuasive the opinion

is.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The ALJ found Dr. Lewis'

opinion is inconsistent with the medical records, which largely document normal

physical examinations, including normal strength, range of motion, and negative

straight leg raise testing, and mild to moderate findings on imaging.  Tr. 22.  Dr.

Lewis' opinion is also inconsistent with the State agency opinions.  Tr. 23.  The

ALJ did not err in his consideration of Dr. Lewis' opinion.

*3.  Medical Expert*

Plaintiff contends the ALJ erred in failing to call a medical expert at the

hearing.  ECF No. 15 at 18.  The obligation to further develop the record is

ORDER - 25

triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Ford v. Saul*, 950 F.3d 1141 (9th Cir. 2020); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff does not contend the record was ambiguous nor inadequate. Plaintiff contends that if an expert had testified, it is "probable" the expert would have found him disabled. ECF No. 15 at 18. Plaintiff has not met his burden in demonstrating the ALJ erred in declining to call a medical expert at the hearing. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

ORDER - 26

1    The District Court Executive is directed to file this Order, provide copies to

2  counsel, and **CLOSE THE FILE.**

3       DATED March 3, 2023.

4                        *s/Mary K. Dimke*
                         MARY K. DIMKE
5                  UNITED STATES DISTRICT JUDGE

ORDER - 27